UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ELLIOTT HOLLY,

Plaintiff,

v.

RICK HARRY,

Defendant.

Civil No. 01-1423 (JMR/FLN)

**REPORT AND RECOMMENDATION**

Plaintiff is a patient of the Minnesota Sex Offender Program, ("MSOP"), who is being involuntarily detained at the Minnesota Sexual Psychopathic Personality Treatment Center, ("MSPPTC"), in Moose Lake, Minnesota. He is attempting to sue Defendant Rick Harry, the Chief Operating Officer of MSOP, for allegedly violating his constitutional right to due process. Defendant has filed a motion to dismiss Plaintiff's complaint for failure to state a claim on which relief can be granted. See Fed. R. Civ. P. 12(b)(6). The matter has been referred to the undersigned for report and recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, the Court finds that Plaintiff's claims have already been adjudicated by a Minnesota state court, and the state court's judgment is not subject to review in federal court. It will therefore be recommended that this action be DISMISSED for lack of subject matter jurisdiction.

**I. BACKGROUND**

During the 1980s, Plaintiff raped several women and was convicted of multiple state sex offenses. See Holly v. Gomez, No. C5-95-2587 (Minn.App. 1996), 1996 WL 146730 (unpublished opinion), rev. denied, May 30, 1996. While in prison for his crimes, Plaintiff "spent a significant period of time in the segregation unit for disciplinary reasons, including

AUG 0 8 2002
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

manipulative ploys to draw female staff to his cell in order to masturbate in front of them." Id. at *1. Before Plaintiff's most recent prison term expired, the Minnesota Commissioner of Corrections commenced civil commitment proceedings against him under Minnesota law. Id. "Three psychiatrists testified that [Plaintiff] is dangerous to other persons and, due to his patterns of behavior, he meets the [Minnesota] statutory definition for psychopathic personality." Id. In August 1992, Plaintiff was found to be a "psychopathic personality" under Minnesota law,[1] and he was civilly committed to a secure treatment facility for an indefinite term. For the past several years he has been held at the MSPPTC in Moose Lake.

In his present complaint, Plaintiff alleges that he has been placed in "protective isolation," (a form of segregated confinement with reduced privileges), and that he has been "receiving cruel treatment" while so confined. (Complaint, [Docket No. 1], § IV.) He specifically alleges that he has been "forced to brush his teeth in handcuffs," that he has not been "allowed to order clothing" or have legal writing pads,[2] that he has not been permitted to go to the "outside yard," that he has been "force[d] to walk around in handcuffs," and that he cannot keep "grooming products " or "extra clothing" in his cell. (Id.) The complaint also includes several vague and conclusory allegations about "harsh living conditions," frequent "abuse," "emotional distress," and a lack of "treatment" for two

---

[1] The Minnesota civil commitment statutes have been amended since Plaintiff was committed. See In re Linehan, 594 N.W.2d 867, 875 (Minn. 1999), cert. denied, 528 U.S. 1049 (1999). Under current Minnesota law Plaintiff presumably would be classified as a "Sexual Psychopathic Personality" and/or a "Sexually Dangerous Person." See generally, Minn.Stat. Chap. 253B.

[2] Plaintiff's allegation about a lack of writing paper is seemingly belied by his extensive contributions to the record in this case.

years. (Id.)

Plaintiff claims that the conditions of his protective isolation confinement violate his constitutional due process rights. He wants Defendant Harry to be held legally responsible for the alleged violations of his constitutional rights, (even though Harry is never mentioned in the "Statement of Claim" section of the complaint), and he is asking for a judgment against Harry in the amount of $1,000,000.

As previously noted, Defendant has filed a motion asking that the complaint be summarily dismissed for failure to state a claim on which relief can be granted. Defendant's motion to dismiss is supported by a memorandum and affidavit, (Docket Nos. 7 and 8), which indicate that Plaintiff has sued Defendant in state court on claims that are similar to the claims raised in his current complaint. Defendant's original motion papers suggested that Plaintiff might be seeking federal review, or federal re-litigation, of claims that have already been adjudicated in state court. The Court therefore directed the parties to file additional affidavits and briefs that would more clearly identify any related state court litigation, and explain how any such related litigation might affect the present case. (See Order dated May 14, 2002; [Docket No. 29].)

Defendant has filed an affidavit that describes three state court cases in which Plaintiff has sued Defendant based on the conditions of Plaintiff's protective isolation confinement. (Affidavit of Michael E. Burns; [Docket No. 31].) In one of those cases, Plaintiff alleged that Defendant Harry was "punishing Plaintiff and treating him as if he were confined for punishment," and that the conditions of his confinement were "too punitive and not treatment." (Burns Aff., Exhibit 2.) Following a hearing in that matter, at which Plaintiff

apparently was allowed to testify,[3] the state court determined that Plaintiff "failed to establish [any] right to recover damages." (Id.) The court therefore directed that judgment be entered in favor of Defendant Harry. (Id.)

In another case cited in Defendant's affidavit, Plaintiff alleged:

> "I've been confined in a cell since 2/23/99. I want treatment. Defendant [Harry] wants punishment. Conditions of confinement is punitive practices, violation of 14th Amendment. I'm being punished, and not provided treatment. I'm entitled to $7,500.00 in damages because pain, and suffering of harsh punishment. I have been abused by Defendant, infliction of emotional distress."

(Burns Aff., Exhibit 3.) That case came before the state court on October 29, 2001, and it appears that Plaintiff was again allowed to testify and offer evidence in support of his claims that Defendant has "punished" him, and denied him treatment, during his protective isolation confinement. (Id.) Once again, however, the state court concluded that "Plaintiff has failed to establish [any] right to recover damages," and granted "judgment for defendant." (Id.)

Defendant now contends that Plaintiff is presently seeking federal court review of claims that have already been decided in the earlier state court cases, and that Plaintiff is not entitled to any such federal review. The Court agrees.

## II. DISCUSSION

If Plaintiff's current claims were raised, or could have been raised, in a state court action that has already been adjudicated, then Plaintiff is barred from seeking federal court review of those claims by reason of the Rooker-Feldman doctrine.

---

[3] According to Defendant, Plaintiff's state cases were brought as "conciliation court" actions, which presumably permit the use of more informal hearings in lieu of full trials.

> "The Rooker-Feldman doctrine recognizes that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476... (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 416... (1923). Instead, federal jurisdiction to review most state court judgments is vested exclusively in the United States Supreme Court. See 28 U.S.C. § 1257; Feldman, 460 U.S. at 486....
>
> The Rooker-Feldman doctrine forecloses not only straightforward appeals but also more indirect attempts by federal plaintiffs to undermine state court decisions. Thus, a corollary to the basic rule against reviewing judgments prohibits federal district courts from exercising jurisdiction over general constitutional claims that are "inextricably intertwined" with specific claims already adjudicated in state court. See Feldman, 460 U.S. at 482 n. 16...; Fielder v. Credit Acceptance Corp., 188 F.3d 1031, 1034 (8th Cir.1999); Neal v. Wilson, 112 F.3d 351, 356 (8th Cir.1997)."

Lemonds v. St. Louis County, 222 F.3d 488, 492-93 (8th Cir. 2000), cert. denied, 531 U.S. 1183 (2001).

Simply stated, "[u]nder the Rooker-Feldman doctrine, lower federal courts lack jurisdiction to engage in appellate review of state court determinations." In re Goetzman, 91 F.3d 1173, 1177 (8th Cir.), cert. denied, 519 U.S. 1042 (1996).

The Court finds that the Rooker-Feldman doctrine is applicable here. The claims that Plaintiff is advancing in this case certainly are "inextricably intertwined" with his earlier state court claims. In fact, it appears that Plaintiff's current claims are virtually indistinguishable from the claims raised in the state court cases that have been cited by Defendant. Both here and in the state court cases, Plaintiff has alleged that Defendant Harry has violated his federal constitutional rights by placing him in protective isolation confinement, by causing him to be "punished" while so confined, and by depriving him of "treatment." The Court cannot discern any meaningful distinction between the state and federal court actions at issue; instead it clearly appears that Plaintiff is simply asking the

federal court to review and overturn the state court adjudications of his claims pertaining to the conditions of his protective isolation confinement.

Furthermore, even if there were some basis for distinguishing Plaintiff's current claims from those raised in the state court proceedings, the Rooker-Feldman doctrine would still apply here. As previously mentioned, Rooker-Feldman bars not only the specific claims that actually were litigated in a prior state action, but also other related claims that could have been brought in the prior action. Goetzman, 91 F.3d at 1178 ("the Rooker-Feldman doctrine, like the doctrine of [claim] preclusion, applies to claims which were not brought before the state court but could have been raised in the state court action"). Because Plaintiff's current claims are directly related to the various claims that he raised in his earlier state court cases, the current claims are barred by Rooker-Feldman, even if they are not exactly the same as the prior state court claims.

Finally, the Court notes that Plaintiff's response to the order of May 14, 2002, (which raised the Rooker-Feldman issue), confirms that he is challenging (once again) the legality and constitutionality of the alleged conditions of his protective isolation confinement. Plaintiff's response, (Docket No. 33), therefore merely reinforces the Court's determination that the claims presented here are "inextricably intertwined" with those previously decided in state court.[4]

[4] In his response, Plaintiff says that he dismissed his state court cases so that he could seek a trial in federal court; but he has offered no evidence to support that assertion, and Defendant's evidence clearly contradicts that assertion. Plaintiff further says that "[t]he State Court has learned that I have been abused at MSOP and granted my appeal on the grounds of the merits of the case." If that assertion were really true, then the present case would seem to be redundant.

In sum, the Court finds that Plaintiff is asking the Minnesota federal district court to review and overrule the Minnesota state court decisions that dismissed his prior state court actions. The only federal court that could do that, however, is the United States Supreme Court. Rooker-Feldman prohibits the federal district court from re-examining the claims pertaining to Plaintiff's protective isolation confinement that were raised, or could have been raised, in his previous state court cases. Thus, the Court concludes that Plaintiff's present lawsuit is barred by the Rooker-Feldman doctrine.

Because Plaintiff's claims are barred by Rooker-Feldman, the federal district court does not have subject matter jurisdiction in this action. Lemonds, 222 F.3d at 492. (Rooker-Feldman holds that "lower federal courts lack subject matter jurisdiction over challenges to state court judgments"). It will therefore be recommended that Defendant's motion to dismiss be granted, and that this action be summarily dismissed for lack of subject matter jurisdiction.[5]

## III. RECOMMENDATION

Based upon the above, and upon all of the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1. Defendant's motion to dismiss, (Docket No. 9), be GRANTED;

2. Plaintiff's "Motion For An Order Against The Defendant For Torture...," (Docket No. 13), be DENIED;

---

[5] Having concluded that this action must be dismissed for lack of subject matter jurisdiction, the Court further concludes that Plaintiff's pending "Motion For An Order Against The Defendant For Torture...," (Docket No. 13), and motion for appointment of counsel, (Docket No. 15), cannot be entertained. It will therefore be recommended that those two motions be summarily denied.

3. Plaintiff's "Motion For Legal Counsel," (Docket No. 15), be DENIED; and

4. This action be DISMISSED for lack of subject matter jurisdiction.

Dated: Aug. 8, 2002

FRANKLIN L. NOEL
United States Magistrate Judge

Under D.Minn. LR 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by 8-23-02, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.